ELIZABETH SHELBY, Adm'x, vs. B. A. OFFUTT, Adm'r.

1. ABANDONED LANDS:  *Agency.   Contract with federal authorities during the war.*
   Where the owner of lands removed to Texas during the late war, and left an agent to supervise and carry on his farm, such agency would not be terminated by the federal occupancy of the territory in which the farm was situated; and a contract entered into between such agent and the federal authorities, to carry on the farm and work freedmen thereon, would not terminate the agency, or give the agent any power to defeat the interest of his principal by claiming the proceeds of the farm, but what he did on the farm, he did as agent, and the products of the farm belongs to the principal.

2. SAME:  *Instructions to the jury.*
   Instructions asked, that are based upon a state of facts in the case, should not be modified by the court, unless there are facts in the case that will sustain the proposition submitted by the modifications.

ERROR to the Circuit Court of *Washington* County.

Hon. C. C. SHACKELFORD, Judge.

The facts in this case are very fully stated, and instructions examined in the opinion of the court.

The following are the assignments of error, to wit:

The court erred in admitting the deposition of Z. C. Offutt.

The court erred in allowing so much of said deposition as speaks of the declaration of McFarland, and the acts of McFarland, to go to the jury.

The court erred in allowing each one of the exhibits to said deposition to go to the jury.

The court erred in refusing each one of the instructions asked by plaintiffs, and also erred in modifying the same.

The court erred in granting the instructions asked by defendants.

The court erred in refusing plaintiff's motion for new trial.

*Harris & George*, for plaintiff in error, filed an elaborate written argument, and argued the case orally.

*W. L. Nugent*, for defendant in error :

The rule of this court in such cases where more than one trial is had is, that on a complicated state of facts, a second verdict is entitled to great weight and should stand, unless manifestly against the law. Stamps *v.* Bush, 7 How., 255. The statute is express that no more than two new trials shall be granted to either party in the same cause. Rev. Code 1857, p. 505, art. 165 ; id. 1871, § 647. And it has been held that the court has no jurisdiction to hear a motion for a third new trial, but it is restricted to setting aside the verdict for error of law, committed by the court during the trial. Ray *v.* McCary, 26 Miss., 404. The only exception taken was to the ruling of the court upon the motion for a new trial, and we therefore insist that the instructions of the court cannot now be inquired into. Special bills of exception could and should have been taken to them, to warrant this court in reviewing them under the peculiar circumstances of the case. Ray *v.* McCary, *supra;* Thornton *v.* West Feliciana R. R. Co., 29 Miss., 143. The mere consent of court to the setting aside of the second verdict cannot affect the plain provision of the statute. The verdict was set aside by the court. undoubtedly at the instance of plaintiff and by consent of the defendant, for the plaintiff was suing for $3,600, and had the right to that or nothing upon the whole theory of the case. In any event, the second verdict for the defendant must stand, unless manifestly against the law.

TARBELL, J., delivered the opinion of the court.

This is an action at law to recover the value of eighteen bales of cotton. The plaintiff in error is the plaintiff in the action as administratrix of the estate of Jefferson Wilkinson, deceased.

The suit was originally instituted against the present defendant's intestate, W. H. Offutt, since deceased. The declaration avers that the cotton in controversy was received and avails used by W. H. Offutt in his lifetime, and in the lifetime of Wilkinson.

The original defendant pleaded the general issue, and payment. There was a trial and verdict for defendant. This verdict was, on motion, set aside, and a new trial granted. In the then condition of the cause, the death of W. H. Offutt was suggested, and the action was revived against B. A. Offutt, the administrator of his estate. Several new pleas were filed by the latter, as follows: The first sets out that the cotton sued for was raised in the year 1864, within the lines of occupation of the military forces of the United States, on a plantation abandoned by the said Jefferson Wilkinson, deceased; that one Tim Nutter, formerly a slave of said Wilkinson, the owner of said plantation, raised said cotton thereon in the year aforesaid, under the protection of the military forces of the United States, and a contract with one McFarland, assistant special agent of the treasury department of the United States, and one Z. C. Offutt, since deceased; and that said Nutter sold his interest in said cotton to said Z. C. Offutt, who thereby became the owner thereof.

To the second additional plea there was a demurrer, which was sustained apparently with the acquiescence of all parties.

To the first there was a replication, in substance as follows: It denies that the plantation was within the lines of occupation of the military forces of the United States; denies that said plantation was abandoned; avers that during the year 1864, W. H. Offutt was the agent of Wilkinson, since deceased, in the production of said cotton, and in the cultivation of said plantation; and that said cotton was raised and said plantation was worked for the benefit of said Wilkinson, now deceased; denies that said cotton was raised under the protection of the forces of the United States, under a contract with one McFarland, A. S. A., of the treasury department of the United States, and one Z. C. Offutt, now deceased; denies that McFarland was, in 1864, such agent,

or in charge of the bureau of F. R. and A. lands; and denies the sale of said cotton by said Nutter to said Offutt.

Another trial upon the issues thus made resulted in a verdict for plaintiff. By consent of parties this verdict was set aside, and a new trial granted.

On the next trial, the jury returned a verdict for defendant.

A motion was made by the plaintiffs to set the last verdict aside, on the following grounds: 1. The jury found contrary, to the evidence; 2. The jury found contrary to the law and the instructions of the court; 3. The court erred in explaining the instructions during the argument of counsel; 4. For other causes to be stated at the hearing. This motion was overruled, and thereupon a writ of error was prosecuted by the plaintiffs in the action. Errors are assigned as follows: 1. In the admission of the deposition of Z. C. Offutt; 2. Allowing so much of said deposition as speaks of the declarations and acts of McFarland to go to the jury; 3. Allowing each of the exhibits to said deposition to go to the jury; 4. In refusing each one of the instructions asked by the plaintiffs, and in modifying the same; 5. In granting the instructions asked by defendants, and in overruling the plaintiff's motion for a new trial.

The view taken of this case will not compel a statement in detail of the evidence and instructions. It sufficiently appears that Z. C. and W. H. Offutt were the agents of Wilkinson. The latter left his place in Bolivar county and removed to Texas with a part of his slaves, leaving a selected number with a foreman, or agent, on the place in question. The two Offutts, named afterwards, also became the agents of Wilkinson of all his interest in Bolivar, and of the plantation in particular, on which the cotton now sued for was raised. In the production of this particular crop, and the cultivation of the plantation that year (1864), the farming utensils, stock, corn and meat used, all belonged to Wilkinson. The federal gunboats visited the section where this cotton was raised in 1863, carrying off such of the stock, corn and colored people as they could secure. The same section was also

visited by confederate scouts during the year referred to in this record.

The deposition of Z. C. Offutt was read in evidence by the defendant. To the reading of the whole the plaintiff objected and excepted, and also specifically to several portions.

Mr. Offutt testified that John Bryant was left by Mr. Wilkinson, as agent or partner, in charge of the Choctaw Bend Plantation, whereon the cotton in suit was raised; that Bryant died in the fall of 1863, when he, Offutt, became the agent of Wilkinson in charge of said place; that in April, 1864, he went to the military authorities at Vicksburg and obtained permission to work 150 freedmen, in pursuance of which permission he secured hands and worked the place in 1864, under a contract with the hands, a copy of which he submitted with his testimony, saying the original was on file in the office of A. McFarland, Assistant Special Agent of the Treasury Department of the United States.

The introduction of this contract, and all evidence in regard to it, was objected to as "incompetent, irrelevant, and illegal."

This witness further testifies that he sent his son, W. H. Offutt, to this place as agent; that the section was frequently visited by both federal gunboats and confederate scouts; that McFarland told him this was an "abandoned plantation;" to which last statement objection was specifically made, as also to a certificate filed by the witness, as follows: "Ex. H. I hereby certify that Dr. C. G. Offutt, owner or agent of the plantations situate in Bolivar county, Mississippi, known by the name of Choctaw Bend and Greenwood, did, on the 2d day of May, 1864, make the proper agreement between the United States government and himself in regard to working freedmen thereon, in accordance with the rules and regulations of the treasury department.

"Goodrich Landing, La., Nov. 5, 1864.

"A. McFARLAND,

"Asst. Special Agt. for Plantations,

"Skipwith District."

In the course of the testimony of the witness Z. C. Offutt, he

repeatedly asserts his agency, and uses this language : " I was agent for Wilkinson on the Choctaw Bend Plantation during the year 1864, doing the best for his interests, and acting largely through my son William."

A witness named Nutter, testified that he was, during the existence of slavery, one of the slaves of Wilkinson; that he, with others, raised the cotton in question; that he sold it to W. H. Offutt, whose father, Z. C. Offutt, took it away.

No evidence of the value of the services of the Offutts, and of their advances, if any, in raising the crop, was offered in evidence, by way of reducing the recovery, but the two defenses indicated payment and settlement with Wilkinson, and that he was not the owner of the cotton, are insisted on.

With this statement of the case, the instructions may now be considered :

One theory of the plaintiff in the action was, that the defendant was the agent of Wilkinson, and took possession of the plantation as such, which agency could only be terminated by the agreement of the parties, and could not be terminated by the acts of the defendant, so that he could hold the plantation in any other way, and the plaintiff so requested the court to charge the jury ; but this request was modified by the court by adding to the charge that the agency could only be terminated by agreement of the parties, the following : " or the intervention of some superior force, over which defendant had no control." This is a material and important modification, and one which must have had a controlling influence on the result, as it runs through the whole series of instructions asked by the plaintiff. Under the facts and circumstances, the modification must have been more than suggestive to the jury ; yet, it is unauthorized by the evidence. Naturally, in the minds of the jury, this modification had reference to the permission given by the agent of the bureau to Offutt to work the plantation; but this consent was upon the solicitation of Offutt; and there is nothing to show that consent would not have been as cheerfully given to Wilkinson; no evidence of interference with

the plantation or of the interruption of the agency by the federal authorities, nor of any disposition on their part to interfere with the one or interrupt the other, on any ground or for any cause. In this connection, the law of congress, upon which the defense in this action mainly rests, may be referred to. That law was approved July 2, 1864; yet, according to the testimony of Z. C. Offutt, and the certificate of McFarland, permission to work the plantation was obtained April 1st; the contract with the freedmen was executed April 25th; other agreement with the United States for working the freedmen on Wilkinson's plantation was made May 2, 1864.

Sec. 2 of this statute, relative to the disposition of captured and abandoned property, has this qualification: " Property, real or personal, shall be regarded as abandoned when the lawful owner thereof shall be voluntarily absent therefrom, and engaged, either in arms or otherwise, in aiding or encouraging the rebellion."

There is no evidence in the record whether or not Wilkinson was "engaged, either in arms or otherwise, in aiding or encouraging the rebellion." There is no evidence of any interference by the federal authorities, or any other superior force or power, with the agency of the Offutts, beyond the consent to work the plantation obtained by Z. C. Offutt, and an occasional visit of the federal gunboats to that neighborhood. Except the testimony of the latter, that McFarland told him so, there is no evidence that the plantation in question was in fact, or in the opinion of the federal authorities, "abandoned;" none, that any steps had been taken by those authorities to ascertain whether it was such within the laws of the United States in such cases; none that any possession or control had been asserted by them, other than the permission to Z. C. Offutt to work it as testified to by him; none that any evidence had been submitted to or sought by them bringing the place within the terms of the law of congress relative to abandoned plantations; nor any that it had been so adjudicated, determined or declared by those charged with the duty; and it may be added that the facts contained in the record do not

Oct. T. 1875.]    SHELBY, Adm'x, vs. OFFUTT, Adm'r.    135

Opinion of the court.

present a case falling within the statute, as expressly construed by its own terms.

Another theory of the plaintiff was, that Offutt being agent of Wilkinson, the crop raised in 1864, and now in controversy, belonged, in law and fact, to him as principal and owner of the plantation. The instruction containing the proposition was refused, as asked, and so modified as to present to the jury the idea that Wilkinson was entitled only to compensation for the use of his land and a fair share of the crops. It needs no elucidation to show that this modification was inappropriate. The record furnishes no basis for it. There is nothing therein out of which to create even a presumption of the relation of landlord and tenant between Wilkinson and Offutt, or of any contract, express or implied, by which the former was to be compensated for his land, and was to share in the crop. Upon the record as presented, title to the cotton was in Wilkinson, whose estate is entitled to its avails and interest, less, perhaps, the value of the services of Offutt as agent, and any proper expenses in the cultivation of the crop; or, he was entitled to nothing, upon the ground of settlement and payment; and, so the proposition submitted in the modified instruction is without evidence to support it.

The second instruction for the defendant " instructs the jury that if they believe from the evidence that the plantation of Wilkinson in Bolivar county, during the year 1864, was in the possession of Z. C. Offutt, and cultivated by him under a written contract, approved by the United States treasury agent, and that, at the end of that year, W. H. Offutt bought the cotton grown by the freedmen, and has paid them the money for the same, he is not responsible in this action to the estate of said Wilkinson, and they will find for defendant."

This is a positive and peremptory instruction, yet, according to the views already expressed, entirely erroneous and unauthorized on several grounds. Excluding those portions of the deposition of Z. C. Offutt objected to, there was no evidence to support this instruction. The declarations and certificate of McFarland were

not evidence, and should not have been received as such. They were the mere unsworn statements of a third party, hearsay only, and the objections thereto ought to have been sustained. Without those portions of the deposition of Z. C. Offutt, the above instructions and the branch of the defense embraced therein, have no foundation.

2. The exhibits filed by this witness were mere copies, unauthenticated by any of the legally recognized modes, and no evidence was offered as to the loss or destruction of the originals.

3. Accepting all the testimony of Offutt, including the declaration of McFarland and the exhibits, the place in question was not "abandoned" within the law of congress.

4. If the Offutts were agents of Wilkinson in raising the cotton in controversy, then the cultivation of the plantation, with or without the consent of the federal authorities, as in this case, the contract with the laborers and the agreement with those authorities, certified to by McFarland, was for the benefit and use of their principal, and hence the above instruction for the defendant was erroneous on this ground.

With reference to the question of payment, it was manifestly overshadowed and controlled by the issues and instructions already referred to. Upon the record, the fact of settlement and payment is fairly open for the consideration of a jury, and should be unembarrassed by matters and questions which, at present, appear to be irrelevant and impertinent.

The point is now made by the defendant in error, that the Code, § 647, is a bar to another trial, there having been three verdicts in the progress of the cause.

As understood, the authorities are adverse to this view, so far as it applies to this court.

When the circuit court has exhausted its power under this statute, bills of exception may be taken to the rulings of that court, under the Code, § 651, and the case brought to this court, whose right to award new trials for errors of law is without limit.

And this is the doctrine of the authorities, and besides, upon the face of the statute, it applies only to the circuit court.

Judgment reversed, cause remanded, and new trial awarded.